Good morning, Your Honor, and may it please the Court, my name is Paul Taggart and I represent the Nevada Waterfowl Association. You've seen many cases here at the Ninth Circuit involving the Truckee River and the Carson River. Yes. And this is another one. Yes. The difference in this case is here we're protecting the wetlands in the Lahontan Valley. And the Lahontan Valley is at the terminus of the Carson River. Pyramid Lake is at the terminus of the Truckee River. So we're talking about a different geographical location that's of interest here. And this area historically was a tremendous area for wildlife, for marshlands, tens of thousands of acres of marshlands at the terminus of the Carson River. That changed when the Newlands Reclamation Project was constructed. And many of those acres were destroyed and diminished as a result of the Newlands Reclamation Project. Environmental problems happen at Pyramid Lake as well and in the Truckee River. And many, many activities have occurred over the years, and most of the cases you've heard have dealt with those activities to protect the environment at Pyramid Lake and in the Truckee River. This case, though, is one of the only ones that is intended to protect the Lahontan Valley wetland areas. We're going to talk about what is irrigation. That's really the crux of this case, and also how did the judge and the district court make that determination. This is a test case, and we have three applications involved here that were filed in front of the Nevada State Engineer. But there are thousands of acre feet of water waiting to be moved to wetland uses if this case comes out in favor of Nevada waterfowl. You agree it's a question of state law? Yes. So let me ask you at the onset, does it make sense to certify this to the Nevada Supreme Court? Is this the kind of case that's that important? Well, I hadn't thought of that, Your Honor, and this case is that important. I was asked that question by a bankruptcy judge about a month ago about certifying a question to the Nevada State Supreme Court, and my answer was the delay can be significant. But this case is very important, and I think it's clear that Nevada water law says that the activities my client is engaged in is irrigation. I think this Court can easily make that finding based upon our arguments. But I do think that the Nevada Supreme Court ultimately decides what Nevada water law is, and so it would be prudent to find out what they believe. I mean, we've been interpreting these decrees for decades, and are you really suggesting that we should, or maybe my colleague, we should pull the question of irrigation out of the context of the decrees and just treat it as if it's the same as it would be in a contract? Well, I think it's very important to be cognizant of the prominence of Nevada water law in all water matters or just state water law in general when we deal with water rights. I think here we've indicated that the state engineer who has tremendous expertise in what Nevada water law is looked at this, looked at the evidence, heard the testimony, made a determination that this is irrigation. I think what you have is a district court judge who has announced a definition of irrigation which has no moorings in Nevada water law nor any other state water law. And so what is it? It becomes Federal common law, something that is not allowed when we deal with water rights. So I think to answer your question, I would rather you make the decision based upon how we've seen it in the past. And I'm going to just raise this sort of on the fly because I'm not eager to certify. I think you're quite correct. Delays matters. But the concern I would have is if we reach a decision and it turned out the Nevada Supreme Court disagreed with it, then that's of some consequence later on if it's purely a matter of state law. If it's a matter, and we have to decide that too, whether it's a matter of interpreting the decree or it's a matter of state law. Anyway, I didn't mean to divert you from your argument. It's clearly a matter of state law. I don't think that's disputable. I think the Reclamation Act says that state law controls water rights even in a Federal Reclamation project. I think this Court's prior precedent indicates clearly that state law governs. I think the tribe has conceded in its brief that state law governs. So really we're talking about what does the State of Nevada believe in terms of water law irrigation is. The Nevada State Engineer made his statement about that. He relied upon specific definitions that exist in Nevada.   It's a matter of state law. But I think the State of Nevada believes in that. But I think the State of Nevada believes in that. Kagan. No, state law doesn't necessarily mean that we have to follow what the State says. Well, it does not. But great deference is accorded to the State Engineer on his interpretation. That's a different issue.  That's a deference, an administrative deference issue. I mean, the Nevada Supreme Court can disagree with that in a second as well. But, again, the Nevada Supreme Court would give great deference to what the State Engineer's determination is on a legal question. Here I think the question is when the 1980 Alpine Decree was written, what did the Court mean when it said irrigation? And, first of all, that word is plain on its face. It's not ambiguous what the Court was talking about when it said irrigation or other uses. And our position is that the district court should not have looked beyond that plain language of the decree. And the Court should have simply looked at what the definitions of that word are and then applied that definition to the facts of the case, particularly the way the State Engineer had decided those facts. So instead what the Court did is it went beyond the plain language, the unambiguous plain language of the decree, and it looked at its opinion that had been issued when the decree was issued. And that's inappropriate. And this Court's precedent says that's inappropriate, that the decree itself of a court is the ultimate and final say of what the rights of the parties are. And other statements that just lead to confusion, ingenious ideas about what that word might have meant, but the reality is that the decree itself is the final document on what the Court meant. There should be no additional deference granted to this district judge because it was a decree of his court. It's an old decree. He did not enter the decree. Your Court's precedent indicates that the same rules of construction apply to a decree as applies to a statute, to a contract. And so because of the plain and the unambiguous nature of that word, irrigation, our position is that the Court should not have gone beyond that word. He should have simply said, okay, how is that word defined? What's the plain meaning of it? We've provided all of that. I think the simple way of understanding it is to artificially apply water to plants. That's what irrigation is. That's what the dictionary says. That's what irrigation textbooks say. That's the broad language that is involved. And now one of the – as I was driving here and we came across the causeway coming in from Sacramento, you see a tremendous amount of lands that are irrigated. They're flooded, just like the wildlife areas that we're talking about here. They're flooded so plants can grow submergent under the water. But those plants are rice. The exact same activity takes place. The farmer decides what time of year to actually apply the water. The farmer puts seed down. The farmer harvests the seed. The same thing happens with this situation that we're talking about today. So just because there's water put on the field and the field is flooded doesn't mean that it's not irrigation because rice is irrigation, clearly. The fact that these plants are grown and then wildlife comes in and eats the plants, that's the same thing as what's commonly understood as irrigation, which is if you grow grass on a field, you don't have to harvest the grass to create irrigation. You simply have to grow the grass and allow cows to eat it, just like birds in our case. So are we being penalized because instead of growing plants for cows or for man, we're growing them for birds? And that's somehow different. That's an absurd result. Oh, I don't know. I mean, it seems to me, looking at the common parlance, because I make the mistake that irrigation is pretty important, and it is in Arizona as well, and in Nevada certainly. And I looked at this case first and I said, well, that's not irrigation. And I read your argument and I understand it, but it's not an absurd argument to say that this falls outside the common view of what irrigation is. Well, what I mean to say – I understand your argument. I'm just saying it's not absurd. It's not an absurd argument. Particularly when you have another pigeonhole called wildlife conservation, waterfowl conservation. Well, I have other counsel that I need to give time to here, but I certainly have a point on that. And all I'll say is that that's – No, I think it's very important because that's my concern too, I mean, in terms of construing the statute. So I'll take your time and answer it. Thank you. On that statute, we're talking about NRS 533-023. I have three points. First of all, it was enacted after the 1980 decree was entered. Our mission here is to interpret what the judge in 1980 meant when he put the word irrigation into that decree. There is no way that the 1989 enactment by the Nevada legislature should influence how we interpret that word in 1980. The second point is that the enactment in 1989 indicates something. That prior to 1989, there was no other manner of use that could describe this activity. Wildlife purposes – I mean, if you take their argument, which I disagree with, that it creates a new manner of use, but if you take their argument that it does create a new manner of use, it indicates that prior to 1989, what would you call this? You would have to call it irrigation. And that's what the Court must have meant in 1980. Our third point is that this was a fee statute. And the citation to the legislative history is in the joint appendix submitted by the government at page 36. The authors of that legislation said, we are creating a separate fee. And if I can just describe what happens here is when wildlife maintenance occurs, it often relies upon floodwaters, large amounts of water that come only once every decade or once every two decades. The amount of money to pay for that large amount of water as irrigation, which – and we pointed out to numerous times the Nevada State Engineer granted applications for this use and called it irrigation prior to 1980. The fees for that under the irrigation statute would be enormous. And so the Director of the Department of Wildlife, who testified at the hearing, and the State Engineer, who also testified at the hearing, said that the reason we put that in is so that when you move these big slugs of water for wildlife, you pay a lesser fee because it doesn't make sense to pay that much – it doesn't make sense to pay the irrigation fee. Now, I think it's been contorted and tortured by the other side what that statute means. But I think the clearest way to get to not need to worry about that statute is that it came about after the decree. And it points out that prior to 1989, there was no other way to describe this use except irrigation. And that's the time – that's the time period we should be focusing on, the 1980 time period. Thank you. May it please the Court. Kristin Geddes, Deputy Attorney General on behalf of the Nevada Department of Wildlife. I'd like to pick up where Mr. Taggart just left off. There's actually a fourth reason why we believe that it's – the legislature did not intend to create additional beneficial use by the enactment of this statute. In the title of the proposed bill, it actually referenced beneficial use as a use of water to wildlife. Through the amendments and the legislative process, that reference to beneficial use was taken out. And the title of the bill actually omitted the language that it was declared the use of water for wildlife as a beneficial use. So I believe it confirms that the legislature did not intend to add that statute to refer to wildlife purposes as an additional beneficial use under the Nevada Water Law. In order to also allow my co-counsel some additional time, I think our brief goes through the substantial evidence we believe supports the state engineer's conclusion in this case, including prior rulings, other persuasive cases, particularly the South Dakota case, which held that beneficial use existed, even though crops that were grown were being harvested by migratory birds instead of for human consumption. And with that, I think that's the most pertinent points I'd like to make. And I'll go ahead and pass to Mr. Stockton. Any questions? Okay, thank you. May it please the Court, I'm Brian Stockton, Senior Deputy Attorney General representing the Nevada State Engineer. And what I would like to start off with is addressing the question of the Court on this is not an irrigation use. But if you notice in the record on appeal, the United States and the tribe argued that this could be a wildlife use, or it could be a recreation use, or it could be a wetlands maintenance use. But it also could be a use of irrigation under the definition, if you look at the ground, on what's actually happening on the ground. And that was the emphasis of the state engineer. He wanted to look at what was happening on the ground. And what was happening on the ground is they're applying the water to this land, and in the same manner that a farmer does. Because in the springtime, the Truckee-Carson Irrigation District comes to these people and tells them, here's how much water you're going to get. And so the farmer has to decide how many acres he can irrigate to make a full crop. Because if you only get the start of a crop, it doesn't do you any good. And these managers at Carson Lake and Pasture have to do the same thing. They have to determine how many acres they're going to have enough water to irrigate. And so the finding of the state engineer was not that it's not wildlife. He didn't find it's not recreation. He found that one of the definitions, or that one of the terms that could be used to apply to this water is irrigation. And therefore, under the decree, which only says a change from irrigation to some other use, requires what we call the haircut, the cut from 3.5 to 2.99. But this is also irrigation, even though it also consists of those other three. And the state engineer used the example of a public golf course, where the watering of a golf course can be called a recreation use, it can be called a municipal use, or it can be called an irrigation use. And the same thing applies here. And so the state engineer's position is that if one of the descriptions that can properly be labeled on this use is irrigation, then it satisfies the requirement under the decree that the transfer should be for the full duty of water, the 3.5. And so just real quickly, the state engineer in Nevada, Arizona notwithstanding, Nevada's the driest state in the United States. We're also the seventh largest territorial state. So there's always this tension between water rights. And the state engineer found that there would be no conflict with the Pyramid Lake rights because you're diverting the same amount of water as they would if they had left these rights on the Bankhead Farm. And if the Nevada Department of Wildlife had left the water rights on the Bankhead Farm but irrigated the alfalfa so that the geese could come in and eat it or use it for winter habitat for wildlife, under the district court's reasoning, the state engineer would have to give them the haircut down to 2.99 even though they're irrigating the same pasture with the same water in the exact same place. And therefore, the state engineer's finding that this use is also irrigation was proper. And under the decree, the decree itself says the decision of the state engineer is prima facie correct, and the burden of proof is on the party challenging that decision. And with that, we would urge you to note that the other labels apply, but so does irrigation. And therefore, for purposes of giving them the haircut, the court should affirm the determination of the state engineer. Thank you. Thank you, counsel. May it please the Court. I'm Catherine Barton from the Justice Department for the United States. And with me at counsel table is Don Springmeyer, counsel for the tribe. I'm sorry. I didn't catch your name there. My name is Catherine Barton. B-A-R-T-O-N. B-A-R-T-O-N. Okay. It's wrong on the calendar.  B-A-R-T-O-N. Yeah. That's it. I just want to make sure the record's straight. Thank you. So this is about interpreting a provision of the Alpine decree, which is a Federal court decree, and had a particular purpose that it was intended to achieve. So it is our position that it is a question of Federal law, of interpreting the decree, and what it meant and what it was meant to achieve. This Court has said that a decree, and this is not in our brief because I got this in response to the 28J letter submitted yesterday, that it's this Court's responsibility to construe a judgment to give effect to the intention of the court. That's a 1980 case. I can supply the site if you care. But I mean, I think that's the case. What deference is owed the State engineer? Well, all the State engineer did here was make a factual determination. That's what his brief says. It's a factual question. And we made a factual determination that this – these plants take up water, so therefore it's irrigation. And that's just not the way that we believe the case should be decided. The State engineer did not purport to interpret the Alpine decree. It cited – Isn't that implicit in his ruling? No. I don't believe so. If it's not, what deference do we owe him? To – if it is? I'm sorry. Let me put it the other – maybe ask the same question. Do you believe we owe something like Chevron deference to a State administrative interpretation of law? Of the Federal court decree? No, of Nevada law. Of Nevada law. I mean, I take your point on the decree. Well, but he also did not purport to interpret Nevada law. He says that the current statutes don't apply. He says it's just a factual question, so I'm not sure what you would be deferring to. All right. So let's assume that's the case. Do we owe his decision any deference? If it was a factual question, the court – to the extent the court decides it's a factual question, we haven't disputed that, and he would be owed substantial deference. You know, we agree. Your position is that it's an issue of law, not fact. That's correct. Therefore, no deference is owed. That's correct. I mean, he could get deference to the interpretation of Nevada law, but he's basically disavowed that Nevada law applies. I mean, there's no pre-1980 Nevada law that he has called on in the Nevada statutes that were enacted subsequently he says don't apply. So I will still address those. But I would like to start with the Alpine decree itself, and I would really encourage the court to read the decision that goes along with the Alpine decree, if you haven't already, because it indicates what the court was trying to do in Administrative Provision 7, which is maintain these historic practices for managing water efficiently in the project. Did not want to disrupt that. The farmers had figured out an excellent way to make good use of the water in the Project Annup River and along the Carson River. And that involved not requiring water to be diverted out of the river to each farm, but running it more as a sheet across, you know, the water so that it was picked up in other canals and fed downstream. And upstream, like in the Carson project, the Carson River way at the top, the water duties are 9.0, and the only, the consumptive use is 2.5 acre feet per acre. So we're talking about 6.5 acre feet per acre that he was concerned if you move it to a consumptive use could be taken out of that system and not available to feed the downstream water, the downstream irrigation rights. So that's the purpose of the right. So the court in, the district court in interpreting the decree first starts and looks at what was the court talking about when it said irrigation use. And the only irrigation use identified within the four corners of the decree or the opinion is agricultural irrigation. And that makes sense because what he was trying to do was maintain this historic use, and those were the uses. And then he goes and looks to the purpose of not allowing the net consumptive portion to be transferred, and it's in order to keep it within the irrigation, the agricultural irrigation system that existed, and allow those rights to continue to be served that way. And a wetlands use he found was 100 percent. So just by its terms. And he goes on and looks at Nevada law. I wouldn't do it that way, but I think the appropriate way to say it is, first of all, there's nothing in the decree to indicate that wetlands maintenance is part of what the decree intended to talk about in terms of maintaining this regime. And then, also, the wetlands use is at the bottom of the system. It's 100 percent consumptive, the district court determined, and will, in fact, take out the water out of the system just as well as if you sent it to municipal use or anything else. It has the same effect. So I think that, to our mind, that answers the question. But if you go on to look at Nevada law, well, first of all, it was said that there was no use other than irrigation under which wetlands maintenance could be included prior to the state statute except irrigation use. But the Moros decision in Nevada found that wildlife use of water for wildlife came under recreational use. And, in fact, if you look at the legislative history of the legislation that was subsequently enacted in 1989, they decide to not deal with adding the wildlife purposes language to the beneficial use part of the code because it's already encompassed in recreational purposes. So that's not, there's no, it seems that the Nevada court always considered this to be recreational, not irrigational. But, and then, when they enacted the statute, they specifically defined or put maintenance of wetlands within wildlife purposes. And that's... How do you respond to the argument that the statutory amendment postdated the decree and, therefore, we should consider it? I do agree with that. We agree that it's a question of federal law and what did the decree mean when it was entered. But if the state engineer says it's a question of Nevada law, it seems that he ought to look to Nevada law in that regard. And to the extent that there is sort of a claim here that wetlands maintenance is irrigation use under Nevada law. And they don't establish that it was before. It appears that it was recreational use before. And now the court, and now the Nevada legislature has defined it differently. And that it is not just, I want to provide you two examples of how the use of wildlife purposes in Nevada law is used in contrast to irrigation use. And one of them is in the appendix, is in the fee statute, in fact. And the appendix, which is reproduced in the appendix submitted by the state engineer, it's 533.435. And you can just go and look down that. There is a separate, there is a fee for issuing, recording each permit to change an existing right, blah, blah, blah, blah, blah, for wildlife purposes. And then there is, oh, actually, and that one, they don't have them numbered here, so you'll have to look through the paragraphs to find it. It's on page 1734 of the laws of Nevada in the second page of the appendix submitted by the Nevada engineer. It describes wildlife purposes or irrigational purposes as if they're two different things. And then, in fact, following that, there are fees, one, for the same activity, two different fees. If it's irrigational purposes, it's $200. If it's wildlife purposes, it's $50. So the stat that, I mean, it doesn't seem like sending it to the Nevada Supreme Court at any rate is going to help here, because they've clearly identified one thing is irrigational purposes and it costs one amount. One thing is wildlife purposes, and we know that includes maintenance of wetlands by definition in the statute. And that costs a different amount. Why, then, is it somehow different when we come to interpreting the Alpine decree? It doesn't make sense. And there's also another statute discussed in our brief at page 46, and this is 533.0243, which provides that you have to get permission from the state engineer to make a temporary change from agricultural use to wildlife purposes. I mean, that just seems to say it all to me. It can't be the same use if you have to get permission from the state engineer to make that temporary change. I'm trying to think of what else would be helpful to the Court here. I think our positions are fairly set out in the brief. Oh, I did want to make one point in response to the statement that there was no conflict with the tribe's rights. I'm not quite sure what counsel for the state engineer meant by that. First of all, he said, well, it would be 3.5 acre feet is currently what is delivered for farming use. So if it continues to be delivered for wetlands use, there's no harm to the tribe. But this is a classic situation where, under our view and the tribe's view of the law, they don't get 3.5 acre feet, right? They get less, 2.99. And if you have a lower demand for water from the reservoir, then there's less need to send water into the reservoir from the Truckee River. And the state engineer's brief itself says at the end, retaining the consumptive use water, non-consumptive use water in the system would result in a windfall to the tribe. So, I mean, the engineer clearly understood that over maybe one right, you can't tell the difference, but we're talking about thousands of acre feet of water that will remain in the irrigation system, potentially not be transferred to the, I mean, getting the, by not being, if those acre feet of water that represent the non-consumptive use are not transferred to the wetlands, there will clearly be less demand for water on the reservoir and less need to send in water from the Truckee River. Any further questions? Thank you. If there are no more questions, we ask for the judgment to be affirmed. I have 2.15 left for rebuttal. Would you like to argue? Okay. I'm going to correct Tanya. I just want to make sure you're going to correct the Chief Justice. Thank you. Again, Paul Taggart for the record. Let me run through these as fast as I can. On the question of is it a question of law, is it a question of fact? The question of law is, is the word irrigation plain and unambiguous? And if it is, we look to the definition in common parlance, and that's the end of the question of law. Then we apply that definition to the facts on the ground, and that's the question of fact, which the State Engineer considered and is entitled to substantial deference. The idea that the Federal District Court and this Court shouldn't give deference to the State Engineer on fact questions or on legal questions is, to me, completely contrary to this Court's precedent. The Federal District Court in Reno is sitting just as if it was a state court in this water matter. It incorporated all of the state provisions for appeals from the State Engineer decisions in its decree. It directed all those actions to occur there. So I think it's clear with the level of deference that is required. We cite it to the Rothschild case in a letter yesterday. It's very clear that you don't look beyond, you don't look at the opinion. You look at the decree. And what they're doing is they're looking at the opinion to come up with some reason why you don't look at the plain language of the statute. Now, there's this idea of return flows, that the reason the reason. Is the opinion irrelevant? Excuse me? Is the opinion irrelevant? The opinion should not be reviewed. I mean, what Rothschild says is it allows for the ingenuitous opportunity to come up with contradictions to what the actual language of the decree itself says. So I would say that if it's plain and unambiguous, you do not, it is irrelevant. The opinion is irrelevant. If the language of the decree is plain and unambiguous, because you don't go beyond that in order to interpret. The return flows. The concept behind this provision in the decree certainly involves return flows. But if there is a movement of water from one place in one location to another location, and it goes from irrigation to irrigation, the return flows that were present in the former use are lost. So the decree anticipates that return flows will be lost when it's a transfer from irrigation to irrigation. And so the idea that you can't reverse it now and say as long as there is a capture of return flows, then we trigger this haircut, as was said before. No, the decree anticipated that in certain situations there would be a reduction in return flows as long as it was within that segment of the Karst River. And remember that the judge, Judge Thompson, had months of testimony on how to construct this regulatory system. And so he understood that there would be the loss of return flows in some situations when we go from irrigation to irrigation. And that's why the judge's last statement in his order is so confounding, is he says that even if this was irrigation, he'd still reduce it down to the consumptive use only. That makes no sense. The decree says if it's from irrigation to irrigation, it's accepted that some return flows will be lost. Now, will this be a windfall to the tribe? I think it's very, very misleading to say that thousands of acre feet will end up at Pyramid Lake. I'm not sure if that's what was intended by that statement. But let's remember that the Truckee River only contributes roughly 20 percent of the water demand for the Carson Division of the New Owns Project. And the Carson Division is served mainly by the Carson River, so not the Truckee River. And there was much evidence put on about this by a fact finder, or in front of a fact finder, about how this would affect the Truckee River. And an environmental impact statement was reviewed, and it determined that efficiencies in the project would actually go up through this water program, which means that the diversions in the Truckee River would be less. And that was a former state engineer who provided that testimony, that this water acquisition program would actually help the Truckee River and not hurt it. So we ask you to reverse the district court, and thank you for your time. Thank you, counsel. Thank you all for your arguments. Interesting case, and we will take it under submission.
judges: Schroeder, Thomas, Silverman